**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

**CIVIL ACTION NO.: 1:08CV-150-M**

**AUS-TEX EXPLORATION, INC. and
DMS PARTNERS, LP**                                                                       **PLAINTIFFS**

**v.**

**RESOURCE ENERGY TECHNOLOGIES, LLC**                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon a motion by the defendant, Resource Energy Technologies, LLC ("RET"), to dismiss [DN 15]. Also before the Court is a motion by plaintiffs, Aus-Tex Exploration, Inc. ("Aus-Tex") and DMS Partners, LP ("DMS"), for leave to file an amended complaint [DN 21]. Because a party is free to amend its complaint once as a matter of course before a responsive pleading is served, Fed. R. Civ. P. 15(a)(1)(A), and because no responsive pleading has been filed in this matter, the plaintiffs' motion for leave to file an amended complaint is granted.[1] For the reasons that follow, however, RET's motion to dismiss is denied.

**I. INTRODUCTION**

This action arises out of a contract dispute involving the Park City Gas Project in Edmonson County, Kentucky. (1st Am. Compl. ¶ 7.) According to the plaintiffs, Park City Gas, LLC ("Park

---

[1] RET argues that the plaintiffs should not be permitted to amend their complaint because (1) the plaintiffs amended complaint does not resolve the jurisdictional and standing issues raised by RET and (2) RET would be prejudiced if the plaintiffs were permitted to amend their complaint because they would have to brief their standing and jurisdictional arguments again. The Court finds, however, that the jurisdictional and standing issues raised by RET do not warrant dismissal of either the plaintiffs' original or amended complaint. Because RET would not need to brief these issues again, RET would not be prejudiced if the plaintiffs were permitted to amend their complaint.

City")[2] owned various interests in the Park City Gas Field (the "Field"). DMS, RET, and Park City entered into participation and operating agreements to perform gas exploration and development of the Field. (Id. ¶¶ 8, 10.) Under the agreements, RET is to act as operator of the gas producing interests, and DMS, as non-operator of the interests. (Id. ¶ 10.) In entering into the agreement, the parties anticipated that over 200 prospect wells would be identified and completed over five phases. (Id. ¶ 13.) For each prospect well identified by RET, DMS is to provide $150,000 to RET in exchange for a 75% working interest and 65.625% net revenue interest in each particular well. (Id.) The plaintiffs maintain that they have deposited approximately $2.4 million ("Deposited Funds") with RET for purposes of drilling the 17 prospect wells identified thus far. (Id.) According to the plaintiffs, DMS has transferred all of its interest in the Park City Gas Field to Aus-Tex. (Id. ¶ 2.) DMS and Aus-Tex are both parties to this action.

The plaintiffs assert that under the operating agreement, RET is to hold the Deposited Funds in a separate account and is to hold those funds in a fiduciary capacity. (Id. ¶¶ 14, 16.) In connection with this duty, the plaintiffs argue that RET is required to account for the Deposited Funds by providing, on a regular basis, a settlement statement[3] of the account in which the funds were deposited and is required to conduct an audit[4] upon plaintiffs' written notice. (Id. ¶ 20.) The

---

[2] Park City is not a party to this lawsuit.

[3] Section 2 of Exhibit B2 to the operating agreement, entitled "Accounting Procedure Joint Operations," provides that "Operator shall submit a Settlement Statement to the Non-Operators on or before 60 days after the end of each month stating their proportionate share of the Joint Account of the respective month." (1st. Am. Compl., Ex. C at 2.)

[4] Section 5 of Exhibit B2 provides that "[a] Non-Operator, on notice in writing to the Operator and all other Non-Operators, shall have the right to audit the Operator's accounts and records relating to the Joint Account for any calendar year within the twelve-month (12) month (sic) period following the end of a calendar year . . . ." (Id. at 3.)

2

plaintiffs indicate that, although they have deposited $2.4 million with RET, they "have received next to nothing in return." (Id. ¶ 29.) They also indicate that they have a "number of concerns" over RET's operations of the prospect wells because "gas is flowing without resulting in revenue to plaintiffs . . . ." (Id. ¶ 30.) Because RET has not provided settlement statements of the account into which the Deposited Funds were transferred, RET has not conducted an audit upon the plaintiffs' written request, and RET has not properly provided a return on the plaintiffs' investment, the plaintiffs allege that RET has breached its duty as operator. (Id. ¶¶ 29-39.) As a remedy, the plaintiffs seek declaratory and injunctive relief. Specifically, the plaintiffs request a declaration that RET must conduct an audit in accordance with the operating agreement, that the plaintiffs are entitled to an equitable accounting, that the plaintiffs may remove RET as operator of the prospect wells, and that the plaintiffs are entitled to recover their costs and attorney fees. (Id. ¶¶ 40-51.)

## II. DISCUSSION

RET has moved to dismiss the plaintiffs' claims on grounds that the plaintiffs have not established the requirements for diversity jurisdiction and on grounds that Aus-Tex does not have standing to bring this claim.

### A. Diversity Jurisdiction

The "'first and fundamental question presented by every case brought to the federal courts'" is to consider "whether jurisdiction to hear [the] case exists . . . ." Metro Hydroelectric Co., LLC v. Metro Parks, 541 F.3d 605, 610 (6th Cir. 2008) (quoting Caudill v. N. Am. Media Corp., 200 F.3d 914, 916 (6th Cir. 2000)). Because "'[f]ederal courts are courts of limited jurisdiction,'" id. (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)), "'[t]hey possess only that power authorized by Constitution and statute . . .,'" id. Here, the plaintiffs assert that jurisdiction for

this matter is premised upon diversity jurisdiction. (See 1st Am. Compl. ¶ 4.) A federal district court has original "diversity" jurisdiction where "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and the suit is between "citizens of different states." 28 U.S.C. § 1332(a). RET contends that the amount in controversy does not exceed $75,000, exclusive of interests and costs.[5]

### *1. Burden of Establishing the Amount-in-Controversy*

RET argues that the plaintiffs have the burden of establishing that the amount in controversy exceeds $75,000 "by a preponderance of the evidence." (RET's Mem. at 6.) In response, the plaintiffs argue that the burden is on RET to show to a legal certainty that the plaintiffs' claims do not exceed the required jurisdictional minimum. (Pls.' Resp. at 6-9.) This issue is controlled by the legal certainty test articulated by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938). In St. Paul, the Supreme Court held that "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Id. at 288 (citations omitted). Under this test, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Id. at 289. Because "the plaintiff is the master of the claim," Gafford v. Gen. Elec. Co., 997 F.2d 150, 157 (6th Cir. 1993), "'[h]e knows or

---

[5] It would be remiss if the Court did not note that the plaintiffs' allegations as to the citizenship of DMS and RET are deficient. The citizenship of DMS, a limited partnership, is the "citizenship of . . . each of its members." Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990) (quotation omitted). Similarly, a limited liability company "has the citizenship of its members . . . ." Homfeld II, L.L.C. v. Comair Holdings, Inc., 53 Fed. Appx. 731, 732 (6th Cir. 2002) (unpublished) (citation omitted). Without allegations as to the citizenship of DMS's and RET's members, the Court is unable to determine whether the parties are completely diverse. However, because RET has not raised this as an issue, the Court will assume, at least until the issue is addressed, that there is complete diversity between the parties.

4

should know whether his claim is within the statutory requirement as to amount,'" id. (quoting St. Paul, 303 U.S. at 290). According to the Sixth Circuit, "if a plaintiff brings an action in federal court and a defendant seeks dismissal on amount-in-controversy grounds, the case will not be dismissed unless it appears that the plaintiff's assertion of the amount in controversy was made in bad faith." Id. (citation omitted). To make a showing of bad faith, "*the defendant* [must] demonstrate[] to a legal certainty that the original claim was really for less than the amount-in-controversy requirement." Schultz v. Gen. R.V. Ctr., 512 F.3d 754, 756 (6th Cir. 2008) (emphasis added) (quotation and internal markings omitted).

### *2. The Amount-in-Controversy*

RET makes various arguments as to why the value of the plaintiffs' claims for declaratory and injunctive relief do not exceed the jurisdictional minimum. First, RET asserts that the audit requested by the plaintiffs is not yet due under the clear terms of the participation and operating agreements and therefore it is of no value to the plaintiffs. Second, RET maintains that Aus-Tex is not a party to the agreements in question and, therefore, an equitable accounting or removal of RET as operator of the property in question is of no value to it. Finally, RET argues that this is an unnecessary lawsuit and that the plaintiffs' claim for attorney fees should not confer jurisdiction upon the Court. In response, the plaintiffs argue that they are suffering irreparable injury to their rights in the gas assets and their opportunity to explore and develop the properties in question. The plaintiffs have invested approximately $150,000 in each of at least 17 wells, yet they have not received the benefit of the bargain. Furthermore, the plaintiffs maintain that vendors and contractors are not being paid and thus are unwilling to develop the Field. If the Field isn't being developed, then there can be no return on the plaintiffs' investment. Aus-Tex and DMS therefore argue that

5

RET has not shown to a legal certainty that their claims are for less than the jurisdictional minimum.

In actions seeking declaratory and injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977) (citations omitted). In Hunt, where the plaintiffs sought to enjoin a statute that threatened the profits of their business, id. at 337, 339, the Supreme Court held that the amount-in-controversy "is measured by the losses that will follow from the statute's enforcement," id. at 347. Thus, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is not necessarily the money judgment sought or recovered, but rather the value of the consequences which may result from the litigation.'" Lodal, Inc. v. Home Ins. Co. of Ill., 156 F.3d 1230 (table), 1998 WL 393766, at *2 (6th Cir. 1998) (quoting Beacon Constr. Co. v. Matco Elec. Co., 521 F.2d 392, 399 (2d Cir. 1975)); see also N.Y. Life Ins. Co. v. Swift, 38 F.2d 175, 176 (5th Cir. 1930) ("In a suit to prevent a future loss or damage to the plaintiff, the object to be gained by the bill is the test of the jurisdictional amount; in other words, the value of the right to be protected."). Although subject to conflicting authority amongst the Circuits, it is "generally agreed" within the Sixth Circuit "'that the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007) (internal quotation omitted) (quoting Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro, 129 Fed. Appx. 194, 196 (6th Cir. 2005) (unpublished)). But compare Olden v. LaFarge Corp., 383 F.3d 495, 502 n.1 (6th Cir. 2004) (recognizing a Circuit split and expressly declining to "weigh in" on the issue of which party's perspective the amount-in-controversy is determined).

It is unnecessary for the Court to determine whether it may also look to the harm that will

be suffered by RET if the plaintiffs' relief is granted because from the plaintiffs' perspective alone, the amount-in-controversy requirement is satisfied. Here, the harm that the plaintiffs seek to prevent in this declaratory judgment action is substantial. The plaintiffs allege RET has breached its duty as operator; gas is flowing from at least some of the wells in question, but no proof of sales or resulting revenue have been provided to the plaintiffs. Assuming that the plaintiffs are entitled to an accounting,[6] it does not appear to a legal certainty that the amount the plaintiffs would ultimately receive as a result of that accounting would necessarily be less than the jurisdictional requirement. The plaintiffs also assert that RET is under a fiduciary duty to maintain and disburse funds to contractors and vendors, but has failed to do so. Because the development of the Field is the benefit the plaintiffs expected to achieve when entering into the agreements, the loss in value to the plaintiffs' interest in the Field is the value of the object of the litigation. Furthermore, the plaintiffs maintain that under the agreements, the Deposited Funds are owned by the plaintiffs until spent by RET on the development of the prospect wells. RET acknowledges that the plaintiffs have given it over $2 million. In seeking an accounting and audit, the plaintiffs are attempting to protect their interest in these funds.

Ultimately, RET has not shown to a legal certainty that the plaintiffs claims are actually for less than the jurisdictional minimum. Therefore, the Court has subject matter jurisdiction over the

---

[6] Under Kentucky law, "[a]n accounting is an equitable remedy . . . It is defined as an adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due. The underlying theory is unjust enrichment-an accounting primarily prevents unjust enrichment by mandating the return of any benefit received as a result of a breach of fiduciary duty. To maintain an accounting, the claimant must have a contractual or fiduciary relationship with defendant against whom the accounting is directed and an interest in the monies or property subject to the accounting." Gentry v. Coffey, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007) (citations and quotations omitted).

7

plaintiffs claims.

## B. Standing

RET also argues that Aus-Tex can state no claim against RET based on the allegations in the complaint because Aus-Tex is not a party to the participation and operating agreements. Therefore, RET contends that Aus-Tex does not have standing to sue. The plaintiffs argue that Aus-Tex has standing to sue because DMS, who was a party to the agreements in question, assigned all of its interest in the Park City Gas Field to Aus-Tex. Although Aus-Tex was not originally a party to the participation and operating agreements, the plaintiffs argue that this assignment from DMS to Aus-Tex was sufficient to confer standing upon Aus-Tex to sue under the agreements.

### *A. Motion to Dismiss Standard*

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court "must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)). Although a plaintiff, in its complaint, need only provide "a short and plain statement of [its] claim," Fed. R. Civ. P. 8(a)(2), this requires more than pleading bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir.2001) (citing Colum. Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995)). "[A] complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." Bredesen, 500 F.3d at 527 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007)).

If "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion under Rule 12(b)(6), the Federal Rules require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This Rule does not require the Court to convert a motion to dismiss into a motion for summary judgment every time the Court reviews documents that are not attached to the complaint. Greenberg v. Life Ins. Co. of Va., 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . .[,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." Id. (quotation omitted).

### B. *Real Party in Interest*

RET's claim that Aus-Tex does not have standing to sue under the participation and operating agreements is essentially an argument that Aus-Tex is not a real party in interest under Rule 17(a).[7] See Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne, 26 F.3d 39, 42-43 (6th Cir. 1994) ("The real party in interest analysis turns upon whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief.") (citing Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984)). RET argues, that according to Kentucky law, only parties to a contract can enforce rights under that contract. Because Aus-Tex is not a party to the participation or operating agreements, RET maintains that Kentucky substantive law does not provide relief to Aus-Tex under the contract.

In diversity actions, "the governing substantive law" for determining the real party in interest

---

[7] Rule 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1).

9

"is state law . . . ." Layne, 26 F.3d at 43 (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Here, Kentucky substantive law applies. Kentucky has established a four prong test to determine whether an assignor or assignee to a contract is the real party in interest:

> (1) Where an assignment of the whole cause of action has been made previous to the institution of the action, the action must be commenced in the name of the assignee . . . . (2) Where the cause of action or any part of it has been assigned after the commencement of the action . . . the action may continue in the name of the assignor, with the right but not the requirement of the assignee to intervene and assert his rights to the recovery. (3) Where only a part of a claim has been assigned before the action, the assignor may sue to recover the whole of the claim (if recovery therein will be a bar to the insurer's right of action), or the part unassigned, in which latter event the assignee may recover for the part assigned, either in the same or a separate action. (4) In no event may an assignee maintain an action for any part of a claim which has not been assigned to him.

Works v. Winkle, 314 Ky. 91, 98, 234 S.W.2d 312, 316 (1950). Here, the plaintiffs have alleged that DMS "transferred all of its interest of the Park City Gas Field to Aus-Tex . . . ." (1st Am. Compl. ¶ 2.) When the plaintiffs' allegations in their complaint are taken as true, see Bredesen, 500 F.3d at 527, the first prong of the Works test applies, conferring standing upon Aus-Tex.[8] Although the plaintiffs, in their response to RET's motion to dismiss, attached an "Option Agreement" and a "Notice of Exercise of Option," the Court has not considered these documents in ruling upon RET's motion under Rule 12(b)(6). Because there may be issues of fact surrounding the validity and effect of the purported assignment, the Court believes it would be prudent to address those issues on a motion for summary judgment after a reasonable time for discovery is allowed.

---

[8] The Court draws this conclusion because it must accept as true the allegations made in the complaint. This conclusion, however, does not preclude RET from otherwise challenging the assignment via appropriate means.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by plaintiffs, Aus-Tex Exploration, Inc. and DMS Partners, LP, for leave to file an amended complaint [DN 21] is **GRANTED** and the motion by defendant, Resource Energy Technologies, LLC, to dismiss [DN 15] is **DENIED**.


cc:     Counsel of Record